UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

IN THE MATTER OF

DOMINGO HERNANDEZ,                      CHAPTER 7

                                        CASE NO.: 09-23833 (RDD)

            DEBTOR.
---------------------------------X

STATE OF NEW YORK          )
                           )
COUNTY OF WESTCHESTER      ) ss.:

I, Christopher R. Cabanillas, Esq., an attorney admitted to practice before the Courts of the Southern District of New York, United States Bankruptcy Court, as well as the Courts of the State of New York, under penalties of perjury, do depose and state as follows:

1. My firm is the attorney of record for the within debtor, DOMINGO HERNANDEZ.

2. As such, I am fully familiar with the facts and circumstances surrounding the allegations contained in the Motion to Substitute Attorney, Strike Petition and for Sanctions and Fees filed by the stated debtor through his purported incoming attorney, Linda Tirelli, Esq.

3. This affidavit is submitted in opposition to the imposition of any sanctions and/or fees herein and to clarify the facts surrounding the within Petition.

4. The information contained herein is provided only for the purpose of responding to the within motion. It is, thus, necessary for this information to be divulged in and for these purposes only and must be held in strictest confidence except for those purposes.

5. The debtor, DOMINGO HERNANDEZ, has been a client of the firm of Cabanillas & Associates, P.C. since March 9, 2009, at which time Mr. Hernandez retained my firm for "foreclosure defense of your property located at 66 Onondaga, Yonkers, New York 10704" (hereinafter, the "Subject Property")(see Exhibit "A", attached hereto and made a part hereof).

6. Since the initial client interview on or about March 9, 2009, and after having retrieved a copy of the Summons and Verified Complaint filed on February 23, 2009 against Mr. Hernandez by the lender on the Subject Property, The Bank of New York, as Trustee (see Exhibit "B", attached hereto and made a part hereof), Mr. Hernandez was made aware of all of his potential options in regard to defending and protecting his rights in and to the Subject Property, including protection under the Federal Bankruptcy laws, if appropriate.

7. Mr. Hernandez indicated a desire to do whatever was necessary to help him save his property (the Subject Property), signed the stated retainer and made an initial retainer payment of $1250.00 (see Exhibit "C", attached hereto and made a part hereof).

8. Thereafter, my firm (a) filed a Notice of Appearance, Verified Answer, Set-Offs and Counterclaims in the Westchester County Supreme Court action on April 6, 2009 (Index No, 09-03295)(see Exhibit "D", attached hereto and made a part hereof); amended the answer and counterclaims on April 17, 2009 (see Exhibit "E", attached hereto and made a part hereof); received and reviewed answers to our counterclaims; received, reviewed and analyzed lender's Motion for Summary Judgment dated April 28, 2009; appeared in Westchester Supreme Court in re this matter at least 4 times in Court and/or foreclosure conferences on behalf of Mr. Hernandez (see Exhibit "F", attached hereto and made a part hereof); and in all ways continued to represent Mr. Hernandez wherever and however proper and possible.

9. Regarding Mr. Hernandez' address of residence, very importantly, I point to the mortgage documents attached hereto and made a part hereof as Exhibit G, dated January 8, 2007, in which Mr. Hernandez clearly warrants to the lender therein (The Bank of America) that the Subject Property will be occupied by

him within 60 days of the execution of the Agreement and Security Instrument:

> "**Occupancy.** Borrower shall occupy, establish and use the Property as Borrower's principal residence within 60 days…………and shall continue to occupy the Property as Borrower's principal residence for at least one year."

There are similar occupancy requirements in the Bank of New York mortgage documents (Exhibit B).

10. Mr. Hernandez represented to my firm that the Subject Property was, as warranted to his lenders, his principal residence and it is for that reason that the subject Chapter 7 filing was made in the White Plains division of the U.S. Bankruptcy Court S.D.N.Y.

11. With the view that a possible loan modification might be appropriate for Mr. Hernandez, my firm had him fill out a Loan Modification Information sheet on or about April or May of 2009 (see Exhibit "H", attached hereto and made a part hereof) which was signed by Mr. Hernandez and which shows the address of the Subject Property in Yonkers, NY. Such a loan modification possibility would only have been applicable to Mr. Hernandez if the Subject Property was his residence (as of April or May, 2009).

12. Interestingly, Mr. Hernandez, in his affidavit submitted with the subject Motion, makes no statement whatsoever confirming

that he adhered to these residency strictures, which leads one to conclude that he either may have misrepresented his residency intentions to his lenders or is misrepresenting his residence now to this Court. In any event, his credibility is suspect.

13. During September, 2009, my firm continued to represent Mr. Hernandez in Westchester Supreme Court and communicated with him on numerous occasions (see Exhibit "I", attached hereto and made a part hereof).

14. On or about the evening of September 30, 2009, Mr. Hernandez informed me via telephone that he had decided to file for protection under the Bankruptcy Laws.

15. As Ms. Hudgins-Riley and I had previously done with Mr. Hernandez when he first retained my firm in March of 2009, I again reviewed with him all of the necessary information regarding the various chapters and options available to him under the Bankruptcy Code, also telling him that he could attempt to renegotiate the terms of his first mortgage through the Bankruptcy Court's Loss Mitigation Program, as well as seeking the discharge of numerous unsecured debts.

16. Mr. Hernandez clearly stated that he wished to proceed with the bankruptcy filing and agreed to come to the offices of Cabanillas & Associates, P.C. in the early morning of October 1, 2009 for the specific purpose of providing information needed to

complete and immediately file a bankruptcy petition on the morning of October 1, 2009.

17. Mr. Hernandez also indicated that he would take the online pre-bankruptcy counseling course that evening (September 30, 2009) and list the Firm's fax number for purposes of receiving the counseling certificate.

18. Mr. Hernandez arrived at the Office of Cabanillas & Associates, P.C. at approximately 8:56 a.m. and met first with Betty Penafiel, a paralegal of the Firm, (see Exhibit "J", attached hereto and made a part hereof) and specifically stated that he was there to complete the bankruptcy petition. Ms. Penafiel informed me that Mr. Hernandez was present, and I instructed Ms. Penafiel to have Mr. Hernandez sit with the firm's paralegals to complete the bankruptcy petition. (See attached affidavit of Betty Penafiel, submitted herewith.)

19. Thereafter, Mr. Hernandez next met with paralegal Yisel Perez, and Ms. Perez began to complete the bankruptcy petition at a computer terminal containing Best Case Bankruptcy Software with Mr. Hernandez at her side and bankruptcy petition preparer Evan Smith (of my office) on the phone with her. Mr. Hernandez was aware that Ms. Perez was completing a Chapter 7 bankruptcy petition for Mr. Hernandez.

20. Mr. Hernandez told Ms. Perez to file the petition on his

behalf that morning, even though he could not wait to sign it (see affidavit of Yisel Perez, submitted herewith).

21. Ms. Perez and Mr. Hernandez were next joined at the Best Case Bankruptcy Software terminal by Mr. Atheeb Khateeb. Mr. Khateeb is a 2009 law school graduate who is currently employed by the Firm as a full time law clerk and, having just received notification that he passed the New York State Bar exam, will be employed as a full time associate attorney of the Firm once he is admitted to the New York State Bar.

22. Mr. Khateeb and Ms. Perez continued to work with Mr. Hernandez to complete his bankruptcy petition, in full communication over the telephone with Evan Smith, bankruptcy preparer.

23. Mr. Hernandez was aware that Mr. Khateeb was assisting in the preparation of his bankruptcy petition.

24. Mr. Hernandez provided all of the information submitted in his bankruptcy petition, including the listing of his name as Domingo Hernandez Sr., his social security number, as well as listing his home address as 60 Onondaga, Yonkers, NY.

25. Prior to the filing of the bankruptcy petition, but after providing the information set forth above, Mr. Hernandez indicated that he had to leave the office to go to work, but would return later that afternoon. (See affidavits of Mr. Khateeb, submitted herewith, as well as that of Ms. Perez). Prior to leaving, Mr. Hernandez also (a) indicated that his

pre-counseling certificate would arrive shortly via fax and (b) indicated that he would obtain and bring with him a copy of his credit report upon his return.

26. Upon arriving at the office of the Firm on the morning of October 1, 2009, I reviewed the bankruptcy petition and filed the same electronically. Although I noticed some additions that would require amendment of the Petition, (such as additional debts about which Mr. Hernandez had made mention the previous evening, but about which he provided no documentation on that morning, though he had stated that he would), I determined that the Petition was in sufficient form for purposes of filing, especially in light of (1) the urgency to file the Petition prior to the stated court settlement conference scheduled for that same morning, and (2) Mr. Hernandez's representations to return to the office later that afternoon in order to discuss his bankruptcy case further, to sign his petition and to bring needed documentation.

27. The Bankruptcy Petition was filed by the Firm with the full knowledge, support, and in fact, urging, of Mr. Hernandez. The purpose of the filing was to attempt to save Mr. Hernandez's primary residence-his house-and to seek discharge of his dischargeable debts in bankruptcy.

28. (a) As can be seen from the affidavits of Mr. Khateeb and Ms.

Perez submitted herewith, Mr. Hernandez would not remain in the office on the morning of October 1, 2009 long enough to wait for our receipt of the pre-filing counseling certificate (that he was supposed to have completed the night before) nor to sign a copy of the e-filed Bankruptcy Petition as he should have, instead stating that he was late for work and had to go but wanted the petition to be filed for him immediately.

(b) When I spoke to Mr. Hernandez later on October 1, 2009, I told him that he needed to bring in reimbursement to me for the filing fees I had paid for him; it was only then that he, all of a sudden, had no knowledge of the bankruptcy filing.

29. The strategy was to avail Mr. Hernandez of the Bankruptcy Court's Loss Mitigation Program wherein we would attempt to negotiate a loan modification that would significantly lower the monthly mortgage payments of his first mortgage. In addition, the plan was to seek a discharge of Mr. Hernandez's unsecured creditors, including possible junior mortgagees that held liens against his property.

30. Furthermore, the urgency of the filing was due to an attempt to keep Mr. Hernandez's state court loss mitigation remedies alive. Provided that Mr. Hernandez's Bankruptcy Petition was filed prior to that same morning's state court foreclosure settlement conference, the state court settlement conference would have to be stayed as a result of the automatic stay

afforded by the filing of the bankruptcy petition. This was important because had the state court settlement conference not been stayed, we were convinced that Mr. Hernandez would have been ordered removed from the state court foreclosure settlement conference part at that very settlement conference, and summary judgment would have been granted to the Plaintiff Bank against Mr. Hernandez.

31. Since Mr. Hernandez had indicated a strong desire to avail himself of the protections afforded under the federal bankruptcy laws, and since he was eligible to do so based upon his representations to my firm, by filing the subject bankruptcy petition, we were enabling him to take advantage of the bankruptcy laws as well as keeping the state court settlement conference "alive".

32. It was necessary to file a Chapter 7 petition, not Chapter 13, because, **as represented by Mr. Hernandez**, he did not have the income to qualify for a Chapter 13 as of October 1, 2009.

33. Thus, we were providing Mr. Hernandez with the best possible chance to stave off foreclosure, discharge dischargeable debts and protect his property.

34. I never told nor advised Mr. Hernandez that he should stop making mortgage payments nor stop paying his home owners insurance. Mr. Hernandez was, when he retained my firm, already being sued by his first mortgage lender; was, thus, in default

on his mortgage payments; had his mortgage/note accelerated; and was at a point wherein his lender would not, upon information and belief, accept further mortgage payments other than pursuant to its litigation against Mr. Hernandez.

35. The statement of Ms. Tirelli in paragraph 6 of the subject motion, clearly shows that, as she is not, upon information and belief, admitted to practice law in state courts of the State of New York, she does not have the ability to access the proper County files so as to ascertain exactly what has been done and filed by my firm. The exhibits appended hereto show that, in fact, Cabanillas & Associates P.C. did **much more** than just file a Notice of Appearance in the foreclosure matter (Exhibit F).

36. The full amount of the retainer for the myriad services of Cabanillas & Associates P.C. in re Mr. Hernandez was a total of $7500, which included **$1500** for work for him in Bankruptcy Court.

37. Jan Hudgins Riley, Esq. is of counsel to the firm of Cabanillas & Associates, P.C. which is clearly delineated in the retainer signed by Mr. Hernandez (Exhibit A).

38. As that retainer included any and all matters in defense of Mr. Hernandez' Subject Property, including the possibility of bankruptcy filing, Mr. Hernandez had notice and agreed to the stated "of counsel" and no fees have been improperly "shared" with Ms. Hudgins-Riley in this bankruptcy filing.

39. In summary, Mr. Hernandez was integrally involved in the filing of the subject Chapter 7 bankruptcy petition, asking and urging my firm to file it on his behalf, which he knew was to be done electronically. That no signature was obtained from Mr. Hernandez on the subject petition was due solely to his unwillingness to remain in my firm's office long enough to sign that Petition and his failure to ever return to do so. In spite thereof, Mr. Hernandez did, on October 1, 2009, ask that my firm do whatever was required to have his petition immediately filed and promised to return later that day to attend to matters left unattended due to his need to leave hurriedly.

40. Cabanillas & Associates, P.C. has worked tirelessly to try to help Mr. Hernandez, with vigor and professionalism, always with his knowledge and agreement. The imposition of fees and/or sanctions is totally without merit in this case.

41. We enter no objection to and/or take no position as to the substitution of Linda Tirelli, Esq. as counsel for the Debtor nor as to the striking of the petition itself.

WHEREFORE, we ask that the within motion be dismissed in its entirety as to the imposition of fees and/or sanctions as against Cabanillas & Associates, P.C., Jan Hudgins-Riley, Esq. and/or Christopher R. Cabanillas, Esq., including "non-base legal fees in the amount of $3500"; and for such other and further relief as to this Court may seem just and equitable.

Sworn to before me this 5th day of November, 2009.

*[signature: Jan H. Riley]*

JAN H. RILEY
Notary Public, State of New York
No. 02RI5019934
Qualified in Sullivan County
Commission Expires Nov. 01, 2013

*[signature: Christopher R. Cabanillas]*

Christopher R. Cabanillas, Esq.