
*470290775MTG1*

| Control Number | Instrument Type |
|---|---|
| **470290775** | **MTG** |



# WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
## (THIS PAGE FORMS PART OF THE INSTRUMENT)
### *** DO NOT REMOVE ***

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:
TYPE OF INSTRUMENT: MTG - MORTGAGE
FEE PAGES: 15    TOTAL PAGES: 15

| RECORDING FEES | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $45.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| TOTAL FEES PAID | $70.00 |

| MORTGAGE TAXES | |
|---|---|
| MORTGAGE DATE | 1/8/2007 |
| MORTGAGE AMOUNT | $30,000.00 |
| EXEMPT | Yes |
| COUNTY TAX | $75.00 |
| YONKERS TAX | $150.00 |
| BASIC | $150.00 |
| ADDITIONAL | $60.00 |
| MTA | $75.00 |
| SPECIAL | $0.00 |
| TOTAL PAID | $510.00 |

| TRANSFER TAXES | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

RECORDING DATE: 2/20/2007
TIME: 13:44:00

SERIAL NUMBER: CX54184
DWELLING: 1-2 Family

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
CITY OF YONKERS

WITNESS MY HAND AND OFFICIAL SEAL

*[signature]*

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
FISERV LENDING SOLUTIONS
27 INWOOD RD

ROCKY HILL, CT 06067

Mortgage Recording Tax:

Hernandez, Domingo

Record and Return To:
Fiserv Lending Solutions
27 Inwood Road
ROCKY HILL, CT 06067

1

Loan Number: 68278001394199

———————————————— [Space Above This Line For Recording Data] ————————————————

# CREDIT LINE MORTGAGE

This is a credit line mortgage ("Mortgage") as that phrase is defined in New York Real Property Law 281. The Mortgage secures the original debt and also the debt created by future advances made under the Home Equity Line of Credit Agreement within 20 years from the date this Mortgage is recorded, to the same extent and with the same priority of lien as if such future advances had been made at the time this Mortgage was recorded, although there may have been no advances made at the time of execution and acknowledgment of the Mortgage and although there may be no indebtedness outstanding at the time any advance is made. The HELOC Agreement reflects the fact that the parties reasonably contemplate entering into a series of advances, payments and readvances, but that the total amount of indebtedness secured by this Mortgage at any one time shall not exceed the Maximum Principal Amount, plus interest, and plus any disbursements made to protect the security of the Mortgage, with interest on such disbursements at the Agreement rate.

The Maximum Principal Amount secured by this Credit Line Mortgage (not including charges and collection costs which may be owing from time to time) shall not exceed THIRTY THOUSAND AND 00/100

(U.S. $ 30,000.00      ) plus interest. That amount is referred to in the Agreement as the Credit Limit.

**DEFINITIONS**
(A) "Security Instrument" means this document, which is dated JANUARY 8, 2007      , together with all Riders to this document.
(B) "Borrower" is DOMINGO HERNANDEZ 66 ONONDAGA ST, YONKERS, NY 10704-1950

the party or parties who have signed this Security Instrument.
Borrower is the Mortgagor under this Security Instrument.
(C) "Lender" is Bank of America, NA

Lender is a National Banking Association                                          organized
and existing under the laws of THE UNITED STATES OF AMERICA
Lender's address is 100 North Tryon Street, Charlotte, North Carolina 28255
Lender is the Mortgagee under this Security Instrument.

Section:             Block:                 Lot(s)/Unit No(s).:

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI HLC 10/06/06                          Page 1 of 13                    DocMagic eForms 800-649-1362
                                                                             www.docmagic.com

(D) "Agreement" means the Home Equity Line of Credit Agreement signed by the Borrowers.

(E) "Account" means the Home Equity Line of Credit Account pursuant to which the Lender makes Advances to the Borrower at the Borrower's direction, allowing the Borrower to repay those Advances and take additional Advances, subject to the terms of the Agreement.

(F) "Credit Limit" means the maximum aggregate amount of principal that may be secured by this Security Instrument at any one time. The Credit Limit is $30,000.00 . Except to the extent prohibited by Applicable Law, the Credit Limit does not apply to interest, Finance Charges, and other fees and charges validly incurred by Borrower under the Agreement and this Security Instrument. The Credit Limit also does not apply to other advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

(G) "Account Balance" is the total unpaid principal of the Account, plus earned but unpaid Finance Charges, outstanding fees, charges, and costs.

(H) "Maturity Date" is the date on which the entire Account Balance under the Agreement is due. The entire Account Balance on your Account, as defined in the Agreement and this Security Instrument, is due on JANUARY 8, 2032 .

(I) "Property" means the Property that is described below under the heading "Transfer of Rights in the Property."

(J) "Secured Debt" means:
   (1) All amounts due under your Account, including principal, interest, Finance Charges, and other fees, charges, and costs incurred under the terms of this Security Instrument and all extensions, modifications, substitutions or renewals thereof.
   (2) Any advances made and expenses incurred by Lender under the terms of this Security Instrument.

(K) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ 1-4 Family ☐ Condominium Rider ☐ Escrow Rider
☐ Second Home ☐ Planned Unit Development Rider ☐ Mortgage Insurance Rider
☐ Other(s)

(L) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(M) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(N) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(O) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument.

(Q) "Approved Prior Loan" means a lien which is and which lender acknowledges and agrees will continue to have priority over the lien created by this Security Instrument.

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06        Page 2 of 13        DocMagic eForms 800-649-1362
                                                www.docmagic.com

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Secured Debt under the Agreement, and all renewals, extensions and modifications of the Agreement; and (ii) the performance of Borrower's promises and agreements under this Security Instrument and the Agreement. For this purpose, Borrower mortgages, grants and conveys to Lender and Lender's successors and assigns the following described property located in the

COUNTY of WESTCHESTER
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]
OF.

Being the same property conveyed and described in a Deed recorded among the land records of the County set forth above:

Deed recorded in BOOK 46275 PAGE 651

This is or will be improved by a one or two family dwelling only.

Parcel: 6-6403-33

**All that tract or parcel of land in**
City/Town Yonkers
County Westchester
State New York

control # 462750651

which currently has the address of 66 ONONDAGA ST
[Street]
YONKERS NEW YORK 107041950 ("Property Address"):
[City] [State] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

ADVANCES. During the Draw Period described in the Agreement, the Borrower may repeatedly take and repay any advances that Lender makes to Borrower under the terms of the Agreement and this Security Instrument, subject to the terms that the Agreement and this Security Instrument impose. The Agreement and this Security Instrument will remain in full force and effect notwithstanding that the Account Balance under the Agreement may occasionally be reduced to an amount of equal to or less than zero. This Security Instrument secures the Secured Debt including the Agreement including advances, payments and readvances.

Any amounts that Lender advances to Borrower in excess of the Credit Limit will be secured by the terms of this Security Instrument unless applicable law prohibits the same. Lender shall not be obligated to increase the Credit Limit formally or to make additional Advances in excess of the Credit Limit stated in the Agreement even though the Credit Limit has been exceeded one or more times. The Draw Period may or may not be followed by a Repayment Period, as described in the Agreement, during which additional Advances are not available. During both the Draw Period and the Repayment Period the Lender may, at its option, make Advances from the Account to pay fees, charges, or credit insurance premiums due under the Agreement or this Security Instrument, or make other Advances as allowed by this Security Instrument.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Secured Debt.** Borrower shall pay when due all Secured Debt in accordance with the Agreement and this Security Instrument. All payments shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender

unpaid, Lender may require that any or all subsequent payments due under the Agreement or Security Instrument be by a method of Lender's choosing. These methods include, but are not limited to: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Billing Statement or at such other location as may be designated by Lender in accordance with the notice provisions provided in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Account current. Lender may accept any payment or partial payment insufficient to bring the Account current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Agreement and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    2.    **Application of Payments or Proceeds.** All payments accepted by Lender shall be applied to the Secured Debt under this Security Instrument as provided in the Agreement unless Applicable Law provides otherwise. Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount, of the Minimum Payment.

    3.    **Funds for Escrow Items.** Borrower shall not be required to pay into escrow amounts due for taxes, assessments, leasehold payments, or other insurance premiums unless otherwise agreed in a separate writing.

    4.    **Charges; Liens; Prior Security Interests.** Borrower shall pay all taxes, assessments, charges, fines, and impositions for the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them as provided in Section 3.

Borrower shall promptly discharge any lien, other than the Approved Prior Loan, which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, other than the Approved Prior Loan, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth in this Section.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement. Borrower shall pay when due, or shall cause to be paid when due, all sums required under the loan documents evidencing the Approved Prior Loan and shall perform or cause to be performed all of the covenants and agreements of Borrower or the obligor set forth in such loan documents. All of Lender's rights under this Covenant shall be subject to the rights of the Holder of the Approved Prior Loan.

    5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Agreement. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount

of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower and secured by this Security Instrument. These amounts shall be subject to the terms of the Agreement and the Security Instrument.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgagee clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgagee clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement up to the amount of the outstanding Agreement Account Balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of the Agreement and Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower resides on the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06        Page 5 of 13            DocMagic eForms 800-649-1362
                                                   www.docmagic.com

to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   8. **Borrower's Home Equity Line of Credit Application Process; Default.** Borrower shall be in default if, during the Account application process, or at any time during the term of the Agreement, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Account. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   Borrower is also in default if: 1) Borrower engages in fraud or makes a material misrepresentation at any time in connection with Borrower's Account; 2) Lender does not receive the full amount of any Minimum Payment due or Borrower fails to meet any of the other repayment terms of the Agreement; 3) Borrower's action or inaction adversely affects the Property or Lender's rights in it. Examples of these actions or inactions include, but are not limited to: a) Borrower's/s death, if Borrower is the sole person on the Account; or the death of all but one borrower which adversely affects Lender's security; b) Illegal use of the Property, if such use subjects the Property to seizure; c) Transfer of all or part of the Borrower's interest in the Property without Lender's written consent; d) All or part of the Property is taken by condemnation or eminent domain; e) Foreclosure of any senior lien on the Property; f) Failure to maintain required insurance on the Property; g) Waste or destructive use of the Property which adversely affects Lender's security; h) Failure to pay taxes or assessments on the Property; i) Permitting the creation of a senior lien on the Property other than an Approved Prior Loan; j) Filing of a judgment against Borrower, if the amount of the judgment and collateral subject to the judgment is such that Lender's security is adversely affected.

   Lender may, at its option, take lesser actions than those described at the beginning of this Section. Such lesser actions may include, without limitation, suspending Borrower's Account and not allowing Borrower to obtain any further Advances, reducing Borrower's Credit Limit, and/or changing the payment terms on Borrower's Account. If Lender takes any such actions, this shall not constitute an election of remedies or a waiver of Lender's right to exercise any rights or remedies under the remainder of this Section, the remaining provisions of the Agreement, the Security Instrument, or at law or in equity. Lender may take action under this Section only after complying with any notice or cure provisions required under Applicable Law. In the event Lender elects not to terminate the Account or take any lesser action as provided in this Section, Lender does not forfeit or waive its right to do so at a later time if any of the circumstances described above exists at that time.

   9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any Secured Debt secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender may without notice, perform or cause to be performed any covenant of Borrower in this Security Instrument, and Borrower appoints Lender as attorney in fact to sign Borrower's name. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take this action, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section.

   Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower secured by this Security Instrument, payable according to the terms of the Agreement and this Security Instrument. These

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06                 Page 6 of 13                   DocMagic eForms 800-649-1362
                                                                   www.docmagic.com

amounts shall bear interest at the Agreement rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** Borrower is not required to obtain Mortgage Insurance unless otherwise agreed in writing.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in the Agreement and this Security Instrument.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Secured Debt secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Secured Debt secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Secured Debt immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Secured Debt immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, and Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Secured Debt secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06                           Page 7 of 13                    DocMagic eForms 800-649-1362
                                                                             www.docmagic.com

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be otherwise applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the Secured Debt secured by this Security Instrument granted by Lender to Borrower or any Successors in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the Secured Debt secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

14. **Agreement/Account Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other Account charges collected or to be collected in connection with the Account exceed the permitted limits, then: (a) any such Account charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Agreement). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOMINGO HERNANDEZ/9950700310095l0
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06                     Page 8 of 13                     DocMagic eForms 800-649-1362
                                                                         www.docmagic.com

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender or causes Lender to be paid all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the Secured Debt secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Change of Servicer; Notice of Grievance.** The Agreement or a partial interest in the Agreement (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Servicer") that collects the amounts due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law. There also might be one or more changes of the Servicer unrelated to a sale of the Agreement. If the Agreement is sold and thereafter the Agreement is serviced by a Servicer other than the purchaser of the Agreement, the servicing obligations to Borrower will remain with the Servicer or be transferred to a successor Servicer and are not assumed by the Agreement purchaser unless otherwise provided.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06                     Page 9 of 13                    DocMagic eFormss 800-649-1362
                                                                        www.docmagic.com

alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party and allowed the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and reasonable time to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do; nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, after Lender takes all action and provides all notices required by applicable law, Lender may require that Borrower pays immediately the entire amount then remaining unpaid under the Agreement and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount Borrower owes Lender, which fees shall become part of the Secured Debt.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Agreement and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will pay all costs of recording the discharge in the proper official records. Borrower agrees to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that Borrower pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06        Page 10 of 13        DocMagic *eForms* 800-649-1362
                                                 www.docmagic.com

24. **Agreements about New York Lien Law.** Borrower will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that Borrower will: (a) hold all amounts which Borrower receives and which Borrower has a right to receive from Lender under the Agreement as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a trust fund means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**
   - ☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
   - ☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
   - ☐ This Security Instrument does not cover real property improved as described above.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06            Page 11 of 13            DocMagic eForms 800-649-1362
                                                        www.docmagic.com

MORTGAGEE REQUESTS NOTICE OF ANY ADVERSE ACTION
———— THAT A PRIORITY LIEN HOLDER TAKES WITH REGARD TO ————
THE PROPERTY, INCLUDING DEFAULT AND FORECLOSURE

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 13 of this Security Instrument and in any Rider signed by me and recorded with it.

_____Domingo Hernandez_____ (Seal)     _____ (Seal)
DOMINGO HERNANDEZ      -Borrower                                   -Borrower


_____ (Seal)     _____ (Seal)
                        -Borrower                                   -Borrower


_____ (Seal)     _____ (Seal)
                        -Borrower                                   -Borrower


Witness:                                  Witness:

_____[signature]_____                     _____[signature]_____

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06                       Page 12 of 13                  DocMagic eForms 800-649-1362
                                                                         www.docmagic.com

[Space Below This Line For Acknowledgment]

State of New York )
County of NEW YORK ) ss.
)

On the 8th day of JANUARY, in the year 2007, before me, the undersigned, personally appeared DOMINGO HERNANDEZ  *Domingo Hernandez*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

IVAN D. JONES
NOTARY PUBLIC, State of New York
No. 24-4812171
Qualified in Kings County
Certificate filed in New York County
Commission Expires May 31 2010

_____
Notary Public State of New York

IVAN D JONES
_____
Print or Type Name

My commission expires: 5/31/2010

(Seal, if any)

Tax Map Information No.:

DOMINGO HERNANDEZ/995070031009510
NEW YORK HOME EQUITY LINE OF CREDIT MORTGAGE
NYHESI.HLC 10/06/06                    Page 13 of 13                    DocMagic eForms 800-649-1362
                                                                        www.docmagic.com

# WESTCHESTER COUNTY CLERK RECORDING SHEET
110 Dr. Martin Luther King, Jr. Boulevard    White Plains, NY 10601

------ THIS FORM MUST BE COMPLETED AND SUBMITTED WITH EACH DOCUMENT ------

This page is part of the instrument; the County Clerk will rely on the information
provided on this page for purposes of indexing this document.
To the best of the submitter's knowledge the information contained on this
Recording Sheet is consistent with the Information contained in the attached document

**SUBMITTER INFORMATION:**                Title Number: _____

Company: **FISERV LENDING SOLUTION**
Address: **27 INWOOD RD**
City: **ROCKY HILL**   State: **CT**   Zip: **06067**   Telephone: **800-842-8423**
Attention: _____

---

Document type: **MORTGAGE**   # of pages: **B 14**

Mortgage Amount    On page _1_ of document
$ **30,000**
OR
Consideration/Conveyance Amt
$ _____

Dwelling Type: For Mortgage Only    On page _3_ of document
[x] 1 to 2 family
[ ] 1 to 6 family
[ ] Not 1 to 6 family

1st party name(s) (i.e. grantor/mortgagor)  On page _1_ of document    Business Entity
**Domingo Hernandez**  [ ]
_____  [ ]
_____  [ ]
_____  [ ]
_____  [ ]

Check if submitted
[ ] RP-5217  [ ] 575  [ ] 5165
[ ] TP-584 - Type of property conveyed (1 through 8) ____
[ ] TP-584.1   [ ] IT-2663

2nd party name(s) (i.e. grantee/mortgagee)  On page _1_ of document    Business Entity
**BANK OF AMERICA**  [ ]
_____  [ ]
_____  [ ]
_____  [ ]
_____  [ ]

TAXES PAID                    Reference # Or Check #
                Amount
Mortgage Tax  $ _____   _____
Transfer Tax  $ _____   _____
Mansion Tax   $ _____   _____

RECORDING FEES PAID    Amount    Reference # or Check #
$ _____

Tax designation (Section, Block & Lot) On page _3_ of document
**6 - 6403 - 33**

MORTGAGE TAX AFFIDAVITS SUBMITTED
[ ] 252  [ ] 255  [ ] 280   Other ____
[ ] 253  [ ] 260  [ ] 339-ee

City(ies) or Town(s) for Property Description  On page _3_ of document
**Yonkers**

Cross Reference(s)    On page ____ of document
_____
_____

Property Description -- If required, check the one contained within the document
On page _3_ of document
[ ] Metes & bounds
[ ] Lot number on map filed in the Office of the County Clerk
[x] Refer to deed recorded in the Office of the County Clerk

Record and Return To

Fiserv Lending Solutions
27 Inwood Rd.
Rocky Hill, CT 06067